UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE LABRADOR ABADIN,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM, et al.,<br><br>　　　　　　Respondents. | CASE NO. C25-2411JLR-SKV<br><br>ORDER |

## I.　INTRODUCTION

Before the court is Petitioner Jose Labrador Abadin's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and request for injunctive relief. (Pet. (Dkt. # 1); Reply (Dkt. # 12).)  Respondents United States Department of Homeland Security ("DHS") Secretary Kristi Noem, Acting Director of United States Citizenship and Immigration Services ("USCIS") Todd Lyons, and Acting Director of the Seattle Field Office of United States Immigration and Customs Enforcement ("ICE") Camilla Wamsley, (together, "Respondents") oppose the petition. (Resp. (Dkt. # 9).)  The court

ORDER - 1

1 has considered the petition, the parties' submissions, the relevant portions of the record,
2 and the applicable law.  Being fully advised, the court GRANTS Mr. Abadin's petition.

## II.   BACKGROUND

Mr. Abadin is a citizen of Cuba presently detained at the Northwest ICE Processing Center in Tacoma, Washington.  (Pet. ¶¶ 1, 20.)  Mr. Abadin initially attempted to enter the United States on December 14, 2020, through the U.S.-Mexico border.  (*Id.* ¶ 12.)  Subject to the Migrant Protection Protocols, commonly known as the "Remain in Mexico" policy, DHS issued Mr. Abadin a Notice to Appear ("NTA") in immigration court and required him to remain in Mexico before granting him a paroled entry into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) on April 19, 2021.  (*Id.*)  Mr. Abadin initially established a residence in Tampa, Florida.  (*Id.* ¶ 14.)  He represents that the Orlando Immigration Court cancelled his scheduled hearings during the COVID-19 pandemic and that his parole subsequently expired on April 17, 2022.  (*Id.*)  On July 3, 2025, Mr. Abadin applied to adjust his status under the Cuban Refugee Adjustment Act.  (*Id.* ¶ 15.)  Although Mr. Abadin's first application was denied, DHS received his second I-485 submission for permanent residency on July 25, 2025, and captured his fingerprints for biometric purposes on August 21, 2025.  (*Id.*)  Mr. Abadin moved to Portland, Oregon in September 2025.  (*Id.* ¶ 16.)  On November 16, 2025, DHS agents apprehended Mr. Abadin in Portland, Oregon.  (*Id.* ¶ 18.)  Mr. Abadin has no criminal history in the United States.  (*Id.* ¶ 17.)

On November 27, 2025, Mr. Abadin filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C § 2241.  (Pet.)  He asserts that his immigration detention

violates the Administrative Procedure Act ("APA") 5 U.S.C. § 706(2)(A), and relevant portions of the Immigration and Nationality Act ("INA") and its regulations; the Fourth Amendment's protection against unreasonable seizure and warrantless arrest; and the Fifth Amendment's Due Process Clause and right to counsel.  (*See generally* Pet.)

On December 4, 2025, Mr. Abadin moved for (1) a Temporary Restraining Order ("TRO") "barring the Respondents from removing [him] from the state of Washington," and (2) "[i]ssuance of an order to show cause why the petition . . . should not be granted within three (3) days." (Mot. TRO (Dkt. # 5).)  On December 5, 2025, the court provisionally granted the request for a TRO and prohibited Respondents from removing Mr. Abadin from the state of Washington pending the resolution of Mr. Abadin's TRO motion. (12/5/25 Order (Dkt. # 6).)  Later that same day, the parties stipulated to (1) an expedited briefing schedule, (2) withdrawal of the TRO motion, and (3) Respondents not removing Mr. Abadin from the United States or transferring him to another facility until the court reached a decision on Mr. Abadin's petition.  (Stip. Mot. (Dkt. # 7); *see also* 12/5/25 Order (Dkt. # 8).)  Mr. Abadin's petition is now fully briefed and ripe for the court's consideration.

### III.   ANALYSIS

The court first considers the legal standard for detention of noncitizens during immigration proceedings and then turns to the parties' arguments concerning the present immigration habeas petition.

//

//

A. **Legal Standard for Detention of a Noncitizen During Immigration Proceedings.**

The INA permits detention of noncitizens present in the United States during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Although § 1225(b) requires mandatory detention for certain noncitizens "seeking entry" into the United States, *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018), all persons, regardless of their immigration status, are entitled to due process under the Fifth Amendment, *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."). Thus, even when the government believes it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process. *See E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.") (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).

The Parole Statute, also known as INA § 212(d)(5)(A), provides the Secretary of Homeland Security with discretion to grant parole on a case-by-case basis for "urgent humanitarian reasons or significant public benefit [.]" 8 U.S.C. § 1182(d)(5)(A). When the Secretary grants a noncitizen entry to the United States on parole, such:

> Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents

>must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal.

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

DHS's decision to revoke a noncitizen's parole under section 1182(d)(5)(A) must be conducted on an individualized basis and carried out once the purposes of the parole have been served. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) ("'Common sense suggests . . . that parole given only on a case-by-case basis is to be terminated only on such a basis.'"); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating that once parole is granted, the Secretary may only terminate parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served").

When noncitizens challenge administrative action to revoke their parole or otherwise re-detain them, courts provide judicial review of such decisions pursuant to their authority to review "[a]gency actions made reviewable by statute and final agency action for which there is no other adequate remedy[.]" 5 U.S.C. § 704; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004). Reviewable agency action includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *See* 5 U.S.C. § 551(13). Agency action is deemed final if it (1) "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process[,]" *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948) (citation omitted), and (2) is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'"

*Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation omitted). Thus, DHS's revocation of the release of a noncitizen previously granted parole is reviewable under the APA because it denies a noncitizen's right to liberty and is an action from which rights have been determined.

Under the APA, the court must set aside agency action if it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1118 (9th Cir. 2010) (quoting 5 U.S.C. § 706(2)(A)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).

**B.    DHS's Re-detention of Mr. Abadin is Unlawful.**

Mr. Abadin argues, in pertinent part, that revocation of his parole is unlawful because Respondents (1) brought Mr. Abadin into federal custody without adequate consideration of the individualized facts and circumstances, including the absence of changes that justify revocation of his parole, and (2) re-detained him without the "lawful authority" of persons authorized to revoke his release, both of which violate his rights under the APA and the Fifth Amendment." (Pet. ¶¶ 35-47, 52-56.) Respondents counter that (1) Mr. Abadin is lawfully detained pursuant to 8 U.S.C. § 1225(b), and (2) the court lacks subject matter jurisdiction to hear Mr. Abadin's APA claims. (Resp. at 3-7.) The court agrees with Mr. Abadin.

1. <u>The court has jurisdiction to consider Mr. Abadin's APA claims.</u>

As a threshold issue, Respondents challenge the court's jurisdiction to consider Mr. Abadin's APA claims purportedly because the habeas petition is a "fully adequate remedy[.]" (*See* Resp. at 6.)  The court rejects Respondents' narrow reading of the APA. Pursuant to § 1252(b)(9), Congress explicitly authorized judicial review of final orders concerning "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States" for noncitizen detainees such as Mr. Abadin.  8 U.S.C. § 1252(b)(9).  Notably, Mr. Abadin is not challenging DHS's decision to adjudicate his removability or commence removal proceedings.  (*See generally* Pet.) Rather, he is challenging the constitutionality of his custody in the manner directed by 8 U.S.C § 1252(b)(9), which is a petition to the appropriate court that includes the consolidated reasons that his detention is purportedly unlawful  *See  Gonzalez v. United States Immigr. and Customs Enf't.*, 975 F.3d 788, 810 (9th Cir. 2020) ("The Supreme Court has since instructed that § 1252(b)(9) is a 'targeted' and 'narrow' provision that 'is certainly not a bar where, as here, the parties are not challenging any removal proceedings.'") (citing *Dep't of Homeland Sec. v. Regents of Univ. of California*, 591 U.S. 1, 19 (2020).  Thus, the court has jurisdiction to consider Mr. Abadin's APA claims.

2. <u>DHS's decision to re-detain Mr. Abadin violated the APA.</u>

Mr. Abadin first argues that Respondents abused their discretion, and violated the APA, because they failed to consider Mr. Abadin's individualized facts and circumstances before revoking his freedom and bringing him into federal custody.  (*See*

Pet. ¶ 39.) The court agrees with Mr. Abadin. Here, Respondents do not contest that they failed to considered Mr. Abadin's individualized facts and circumstances before deciding to re-detain him. (*See generally* Resp. (arguing only that Mr. Abadin is subject to mandatory detention and that the court lacks subject matter jurisdication over his APA claims).) Thus, the court concludes that DHS's decision to re-detain Mr. Abadin (1) constitutes an abuse of DHS's discretion, and (2) violates the APA's prohibition on agency action that is "not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Consequently, the court sets aside DHS's decision to revoke Mr. Abadin's parole effectuated by his arrest on November 16, 2025. (*See* Pet. ¶ 18.)

   3. <u>DHS's decision to re-detain Mr. Abadin violated the Fifth Amendment.</u>

   Next, Mr. Abadin argues that Respondents' decision to re-detain him violates the Fifth Amendment. Again, the court agrees with Mr. Abadin. It is undisputed that Respondents revoked Mr. Abadin's release "not through the individual exercise of discretion required by law or the persons enumerated by regulation to do so." (*See* Pet. ¶ 46 (alleging that the DHS agents who arrested Mr. Abadin did so without an administrative warrant); *see generally* Resp.) Nor do Respondents assert that they revoked Mr. Abadin's release because the DHS Secretary determined that the purposes of the parole have been served or that subsequent changes justify Mr. Abadin's redetention. (*See generally* Resp.) By effectuating Mr. Abadin's re-detention in such a manner, DHS failed to provide him with the minimum process due. Thus, Respondents' decision to re-detain Mr. Abadin violated Mr. Abadin's rights under the Fifth Amendment's Due Process Clause.

In response, Respondents argue that because Mr. Abadin was paroled into the United States under 8 U.S.C. § 1182(d)(5) and is now subject to mandatory detention under § 1225(b), his re-detention is lawful. (*See* Resp. at 3-5). The court rejects this argument. Regardless of the reason for Ms. Abadin's detention, Respondents remain subject to an obligation to "effectuate [his] detention in a manner that comports with due process." *See E.A. T.-B.*, 795 F.Supp.3d at 1322.

## C.     Mr. Abadin's Claims for Violation of the Fourth Amendment and the Fifth Amendment's Right to Counsel are not Cognizable in a Habeas Action.

In addition to asserting that his re-detention is unlawful, Mr. Abadin brings claims for violations of (1) the Fourth Amendment's protection against unreasonable seizure and warrantless arrest (*see* Pet. ¶¶ 48-51), and (2) the Fifth Amendment's right to counsel, (*see* Pet. ¶¶ 57-60). Although a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of Mr. Abadin's re-detention and revocation of parole, it is not the appropriate mechanism to challenge the legality of his arrest or to bring claims that are speculative or otherwise not ripe for review. (28 U.S.C. § 2241(c)(3); *see* Pet. ¶ 57 (asserting that "[u]pon information and belief, [DHS] may intend to move [Mr. Abadin] to a remote facility in the American South" due to capacity constraints at his current facility and that such a transfer would "make[] communication with [his] counsel extremely difficult); *see also Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (holding that the basic rationale of the ripeness doctrine is to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.") (internal quotation

marks omitted); *see also Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (holding that district courts properly decline to issue advisory opinions or to declare rights in hypothetical cases rather than live cases or controversies). Because such claims cannot be the basis for habeas relief, the court declines to consider them at this time.

**D.    Mr. Abadin requests Attorneys' Fees and Costs**

Mr. Abadin should file a fee petition as set forth in the Equal Access to Justice Act, 28 U.S.C. § 2412.

## IV.    CONCLUSION

For the reasons set forth above, the court GRANTS Mr. Abadin's petition (Dkt. # 1) and, finding Mr. Abadin is entitled to immediate release from custody, ORDERS that a Writ shall issue. The court DIRECTS Mr. Abadin to file as soon as possible a proposed Writ of Habeas Corpus and to email a Word version to robartorders@wawd.uscourts.gov.

Dated this 28th day of January, 2026.

JAMES L. ROBART
United States District Judge